AO 108 (Rev. 06/09) Application for a Warrant to Seize Personal Property Subject to Forfeiture   AUTHORIZED AND APPROVED/DATE: _____

# UNITED STATES DISTRICT COURT
for the

WESTERN _____ DISTRICT OF _____ OKLAHOMA

| | |
|---|---|
| In the Matter of the Seizure of<br>The cash value of the contents of Fifth Third Bank<br>Account Number XXXXX5432,<br>in the name of Nai Gang Lin,<br>maintained by Fifth Third Bank,<br>5050 Kingsley Drive, Cincinnati, Ohio 45263. | )<br>)<br>) Case No: M-23-923-AMG<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Josh Reinsch, a federal law enforcement officer for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property is subject to forfeiture to the United States of America under 18 U.S.C. § 981(b) and 28 U.S.C. 2461(c), as incorporated by 21 U.S.C. § 881(b), 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C); 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853(f), as incorporated by 18 U.S.C. § 982(b)(1), for violations of 21 U.S.C. §§ 841 and 881(a)(6); and 18 U.S.C. §§ 1956 and 1957:

> The cash value of the contents of Fifth Third Bank Account Number XXXXX5432, in the name of Nai Gang Lin, maintained by Fifth Third Bank, 5050 Kingsley Drive, Cincinnati, Ohio 45263.

The application is based on these facts:

See attached Affidavit of Special Agent Josh Reinsch, of the Homeland Security Investigations, which is incorporated by reference herein.

☒  Continued on the attached sheet.

_____
*Applicant's signature*
Josh Reinsch, Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence.

Date: 11/8/23

_____
*Judge's signature*

City and State: Oklahoma City, Oklahoma

Amanda Maxfield Green, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA        )
                         )
COUNTY OF OKLAHOMA       )

### AFFIDAVIT IN SUPPORT OF SEIZURE WARRANTS

I, Joshua Reinsch, being first duly sworn, depose and state as follows:

1.  I am a Special Agent ("SA") of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), and Homeland Security Investigations ("HSI"), and as such am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.  I have been employed as a special agent with DHS/ICE/HSI since January 2010. I am currently assigned to the HSI Office of Grand Rapids, Michigan.

3.  During the course of my employment, I have participated in numerous drug investigations involving marijuana, cocaine, heroin, fentanyl, and methamphetamine, which have resulted in the arrests of targets, the seizure of illicit drugs and drug-related evidence, and the forfeiture of drug-related assets. I have conducted and supervised complex financial investigations involving the trafficking of drugs and other contraband, and money laundering including the structuring, placement, and layering of large amounts of U.S. currency. I have participated in and/or executed search and seizure warrants authorizing the search of locations used by drug traffickers and their co-conspirators, as well as vehicles

used to transport controlled substances. Materials searched for and recovered in these locations have included controlled substances, packaging materials, scales, cutting agents, weapons, documents, and papers reflecting the identities of co-conspirators and receipts for concealed investments, and proceeds from the distribution of controlled substances. I have personally participated in interviews of witnesses and cooperating sources regarding illegal trafficking in drugs and have read official reports of similar interviews by other officers. I have also participated in surveillance operations, observing and recording movements of persons trafficking drugs and those suspected of trafficking drugs.

4. I have participated in four federal wiretap investigations throughout my career. During those wiretap investigations, I acted as a wire room supervisor and as surveillance and operations Team Leader. During all the above-referenced wiretap investigations, I drafted affidavits for search warrants, organized surveillance operations, interviewed suspects, and executed search warrants. I have conducted minimization, monitoring, and summarization procedures required as part of a wiretap investigation. I also authored numerous tracking warrants to obtain precision location information for cellular telephones. As a result, I have gained knowledge of the methods utilized by drug traffickers and other criminals to avoid detection by law enforcement.

5. While conducting drug investigations, I have personally interviewed confidential sources and persons involved in the distribution of illegal drugs. I have consulted with other experienced investigators concerning the practices of drug traffickers and the best methods of investigating them. In preparing this continuation, I conferred with other Special Agents and law enforcement officers.

6. The facts in this Affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned parties. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation.

## PROPERTIES SUBJECT TO FORFEITURE

7. The United States submits this Affidavit in support of forfeiture of the following accounts:

   a. contents of Fifth Third Bank account number XXXXX3157 in the name of Nai Gang Lin,[1] in the amount of $23,876.34, maintained by Fifth Third Bank, 5050 Kingsley Drive, MD 1MOC2Q-3723, Cincinnati, Ohio 45263 ("**Subject Account 1**");

   b. contents of Fifth Third Bank account number XXXXX5432 in the name of Nai Gang Lin, in the amount of $10,000.40, maintained by Fifth Third Bank, 5050 Kingsley Drive, MD 1MOC2Q-3723, Cincinnati, Ohio 45263 ("**Subject Account 2**");

(together, "**Subject Accounts**").

## BASIS FOR SEIZURE

8. Pursuant to 18 U.S.C. § 981(b), property subject to forfeiture under Section 981 may be seized via a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. Section 982(b)(1) incorporates the procedures in 21 U.S.C. § 853

---

[1] This bank account is operated in the name of an individual known as "Nai Gang Lin," an alias for Naigang Lin ("NAIGANG"), the subject of this investigation described in further detail *infra*.

3

(other than subsection (d)) for all stages of a criminal forfeiture proceeding. Section 853(f) permits the Government to request the issuance of a seizure warrant for property subject to criminal forfeiture.

9. This Application seeks seizure warrants under both civil and criminal authority because the property to be seized could easily be placed beyond process if not seized by warrant, as money is fungible and easily dissipated.

10. The United States alleges that the **Subject Accounts** are subject to forfeiture to the United States because they are properties used or intended to be used to facilitate the commission of criminal activity and because they are proceeds of unlawful drug activity or proceeds traceable to unlawful drug activity in violation of the Controlled Substances Act. Specifically, the United States alleges that the **Subject Accounts** are forfeitable to the United States pursuant to their use and involvement in violations of 18 U.S.C. §§ 1956 and 1957 (money laundering) and 21 U.S.C. §§ 841 (manufacture and distribution of drugs) and 846 (drug conspiracy).

11. Title 18, United States Code, Section 1956 makes it a crime for any person to engage in laundering of monetary instruments.

12. Title 18, United States Code, Section 1957 makes it a crime for any person to engage in monetary transactions in property derived from specified unlawful activity.

13. Title 21, United States Code, Section 841 makes it a crime for any person to knowingly possess a controlled substance with intent to distribute that controlled substance.

14. Title 21, United States Code, Section 846 makes it a crime to conspire to violate a provision of Title 21, that is, Section 846 provides that any person who attempts

4

or conspires to commit any offense defined in that subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## PROBABLE CAUSE

15. HSI, Drug Enforcement Administration ("DEA"), and Internal Revenue Service–Criminal Investigations ("IRS-CI") have been investigating NAIGANG and his associates for criminal activity including money laundering and black-market marijuana distribution. NAIGANG was previously a Michigan resident but appears to have relocated to the Western District of Oklahoma. He serves as a marijuana broker, taking advantage of Oklahoma's recent influx of marijuana cultivators – many of whom investigators have determined are violating state and federal law by selling marijuana on the black-market. Investigators believe that NAIGANG's operation is sourced by his illegal marijuana grows and that he is laundering money as well. On July 5, 2023, NAIGANG was indicted in the Western District of Oklahoma for, among other things, his role in a drug conspiracy, in violation of 21 U.S.C. § 846, and a money laundering conspiracy, specifically a conspiracy to launder funds derived from the distribution of marijuana, in violation of 18 U.S.C. § 1956(h).

16. NAIGANG first came to HSI attention in September 2020 when he was found to be flying to New York City, New York, from Grand Rapids, Michigan, with $50,000.00 in U.S. currency. The ensuing investigation revealed NAIGANG's involvement in black-market marijuana distribution and led agents to identify co-conspirators, including multiple family members: NAIGANG's three brothers – Naiyang Lin ("NAIYANG"), Naiqing Lin

5

("NAIQING"), and Brandon Lin ("BRANDON") – as well as his mother, Li Yang ("YANG"), and father, Dong Lin ("DONG"). Agents have conducted significant physical and electronic surveillance of the organization's operations, including obtaining global positioning system ("GPS") tracking warrants for various phones and vehicles utilized by members and using cameras to surveil marijuana stash houses and illegal grow operations owned by NAIGANG and his family. To date, law enforcement has seized more than 4,000 marijuana plants from their illegal grows, more than 3,500 pounds of processed marijuana, and over $225,000.00 in U.S. currency from NAIGANG and his organization.

17. Agents have identified and analyzed bank accounts owned by NAIGANG and members of his organization to "funnel" or "launder" money in an attempt to conceal the sources of the funding. They accomplish this by obtaining money from other members of the organization through checks, ATM cash deposits, automated clearing house ("ACH") transfers, and peer-to-peer ("P2P") transfers using services such as Zelle, Venmo, and PayPal. Once the funds are received, they are sent out to individuals believed to be working for the organization via P2P systems, which provides both the sender and receiver a layer of anonymity. Once the funds arrive in the accounts, NAIGANG and members of his organization use the money to purchase assets such as real estate, vehicles, and high-end clothing, and accessories. The investigation has revealed that NAIGANG and his associates also launder funds via casinos (both licensed and unlicensed), online sports gambling through websites including DraftKings and BetMGM, and through the purchase and use of cryptocurrency such as Coinbase.

18. Seeking to identify legitimate sources of income for targets of this investigation, agents obtained wage and earning information from the Michigan Department of Labor and Economic Opportunity, as well as through the state of Oklahoma regarding claims by NAIGANG which revealed the following:

   a. NAIGANG claimed only $7,500.00 in wages in the fourth quarter of 2020 and only $3,600.00 in wages in all of 2021, both from employment through Oriental Garden Buffet; and

   b. NAIGANG claimed only $45,000.00 in wages for 2022 and $11,200.00 in 2023, all from employment from JJ Gourmet Kitchen 168 LLC (this business is known as "Private Kitchen," a restaurant owned by NAIGANG and his family in Oklahoma City).

19. Notably, regular surveillance of NAIGANG from September 2020 through May 2023 indicates that he has never been seen at any form of legitimate employment, despite his claims through the states of Michigan and Oklahoma.

20. GPS location information from one of NAIGANG's cellular devices, associated with the number (616) 606-2484, indicates that NAIGANG moved to Oklahoma City, Oklahoma, in February 2022. NAIGANG appears to have begun running Private Kitchen, a restaurant in Oklahoma City, at approximately the same time. The investigation as revealed that NAIGANG used Private Kitchen as a place to meet with associates and to consolidate and process proceeds from the illegal distribution of marijuana. Agents frequently saw NAIGANG and his associates coming and going from Private Kitchen, often carrying backpacks, boxes, and luggage. Based upon their training and experience, investigators believe that this activity is indicative of the aggregation of drugs and/or drug proceeds at this location; specifically, they noted that restaurant patrons do not typically

7

carry such items into restaurants when visiting for meals.[2]

21. On May 2, 2023, in connection with an investigation into NAIGANG, two sealed criminal complaints were authorized in the Western District of Oklahoma against NAIGANG and others charging them with (1) participation in a drug conspiracy, specifically conspiracy to possess with intent to distribute and to distribute marijuana, in violation of 21 U.S.C. § 846, and (2) participation in a money laundering conspiracy, specifically a conspiracy to launder funds derived from the distribution of marijuana, in violation of 18 U.S.C. § 1956(h). On the same day, a federal arrest warrant was issued for NAIGANG.

22. Agents attempted to apprehend NAIGANG on the morning of May 10, 2023. Based on statements given at NAIGANG's residence by his co-conspirators, including his co-defendant and girlfriend Juan Lyu ("LYU"), NAIGANG fled the state upon learning he had an arrest warrant. After NAIGANG fled, he discontinued the use of known cellular devices.

23. On August 15, 2023, NAIGANG was arrested by HSI agents in Atlanta, Georgia, after leaving a residence affiliated with drug associates. NAIGANG was turned over to the custody of the United States Marshal Service ("USMS") and transferred back

---

[2] For example, on December 21, 2022, agents surveilling individuals at Private Kitchen observed NAIGANG grab a brown bag from an associate inside the restaurant, pull out what appeared to be large stacks of currency and lay them on a table. He then appeared to photograph it and appeared to count it before departing with the money in his jacket pockets. Investigators believe, based upon their training and experience, that this currency consisted of proceeds of a specified unlawful activity, particularly marijuana trafficking.

to Oklahoma, where he is currently detained.

24. Prior to NAIGANG's arrest, he left Oklahoma City, Oklahoma, on May 1, 2023, driving a GMC Denali pickup truck bearing Oklahoma license plate NHK746.[3] Agents monitored his travel via a Court-authorized GPS tracking device installed on the vehicle, and observed as he arrived on May 2, 2023, at his residence located at 1744 68th Street SW, Byron Center, Michigan (the "68th Street Residence"). *See* M-23-217-SM.

25. Upon arrival on May 2, 2023, SA Reinsch observed NAIGANG enter the 68th Street Residence. Later that day, via the GPS tracking device, agents observed the Denali pickup truck depart the residence and travel to two separate Fifth Third Bank branches in the greater Grand Rapids, Michigan area.

26. On May 10, 2023, HSI agents executed a search warrant at the 68th Street Residence and an arrest warrant for NAIGANG's brother, BRANDON. HSI seized the Denali, and during the search of the vehicle, discovered a wire transfer agreement from Fifth Third Bank. This form indicates that on May 2, 2023, NAIGANG wired $220,000.00 from **Subject Account 1** to Shan and Pei Homes LLC at Bank of America account number XXXXXXXX8683.

27. Grand jury subpoenas were issued to Fifth Third Bank and Bank of America for the **Subject Accounts** and the Shan and Pei Homes LLC bank account. Financial documents from Fifth Third Bank revealed that NAIGANG opened both **Subject Accounts** on April 19, 2023, with a $500.00 cash deposit into each account.

---

[3] The vehicle is registered to Jia Zhao at 5800 Sanabel Court, Oklahoma City, Oklahoma, a known marijuana stash house for NAIGANG's organization.

28. The remaining activity in **Subject Account 1** includes the following transactions:

    a. a $2,000.00 cash deposit;

    b. a check deposit for $15,500.00 from J.R., whom investigators suspect of having assisted in money laundering for NAIGANG;

    c. a $283,567.87 wire from Transnation Title Company ("Transnation");

    d. a $45,000.00 cash withdrawal on May 2, 2023;

    e. a $220,000.00 wire to Shan and Pei Homes LLC on May 2, 2023;

    f. a $2,000.00 cash withdrawal;

    g. a $4,000.00 transfer to **Subject Account 2**; and

    h. a $35,000.00 check to Blau Law Firm on May 22, 2023 (which was returned to the account due to insufficient funds).

29. Analysis of **Subject Account 2** indicates that after the initial $500.00 cash deposit the following transactions occurred:

    a. a $2,099.00 check from Robert and Ann Kluck was deposited into the account;[4]

    b. a $3,216.80 check from the Oklahoma City Police Department ("OCPD") was deposited into the account;[5] and

    c. $4,184.20 was deposited into the account from **Subject Account 1**.

30. Agents issued a subpoena to Transnation regarding the wire transaction to

---

[4] Robert Kluck was the previous owner of the 2866 Turtlecreek Drive, East Lansing, Michigan (the "Turtlecreek Residence") – currently owned by NAIGANG, and to whom NAIGANG and his family were making payments to per the land contract between them.

[5] This money appears to be a return of the money seized from NAIGANG by OCPD in April 2023 when NAIGANG was arrested for driving a stolen vehicle.

**Subject Account 1**. Transnation responded, indicating that the wire was for the sale of two properties owned by NAIGANG: the Turtlecreek Residence[6] and 5378 Ivanrest Avenue SW, Wyoming, Michigan (the "Ivanrest Residence").[7] Escrow documents provided by Transnation indicate that NAIGANG sold the properties for $200,000.00 and $100,000.00, respectively, to Robert Hubble, Jr., the owner of a Michigan construction company, in April 2023.[8]

31.    On August 5, 2021, investigators surveilled NAIGANG as he traveled in a Chevrolet Silverado from Grand Rapids, Michigan, to the Turtlecreek Residence in East Lansing, Michigan. Upon arrival, NAIGANG entered the residence and remained inside for approximately ten minutes before departing. Agents then followed NAIGANG to the residence of an associate, M.N. located at 3945 Winward Drive, Lansing, Michigan, where NAIGANG entered the residence and met with M.N. After approximately 20 minutes,

---

[6] Investigators first learned of the Turtlecreek Residence by inquiring with the Michigan Department of Licensing and Regulatory Affairs ("MDLRA") about businesses owned by NAIYANG, NAIGANG's brother. The MDLRA indicated that NAIYANG's business, N3Venture, is registered to the Turtlecreek Residence.

[7] On August 31, 2021, agents conduct surveillance of NAIGANG an observed him take what appeared to be a large, full black trash bag from the 68th Street Residence to the Ivanrest Residence. Once there, an associate named T.H. arrived and went inside with NAIGANG, who also brought in the black bag. Later, NAIGANG and T.H. departed separately. A traffic stop was conducted on T.H. and although T.H. did not give consent to search the vehicle, the officer indicated that T.H. was extremely nervous and that the vehicle had a strong odor of marijuana. It is believed that NAIGANG gave the black bag containing marijuana to T.H.

[8] Transnation also indicated to HSI that NAIGANG appeared to owe Robert Hubble money for work he had done for NAIGANG (surveillance had previously seen Hubble Construction vehicles at the Turtlecreek Residence after law enforcement executed a search warrant there in February of 2022) and that is why NAIGANG sold both properties.

NAIGANG exited the residence carrying a large trash bag that appeared, by the manner in which he was carrying it, to be heavy, placed it in his truck, and departed. As NAIGANG arrived back in the Grand Rapids area, law enforcement conducted a traffic stop on his Silverado. NAIGANG refused to consent to a search of the vehicle, but the trooper conducting the traffic stop observed a large trash bag on the back seat and a smaller trash bag on the floor of the passenger seat. When asked what was in the bags, NAIGANG stated that he had been in Lansing doing laundry at a family member's house. NAIGANG was subsequently released and traveled to the 68th Street Residence. Based upon information previously gathered through surveillance, as well as seizures conducted during this investigation, investigators believe that NAIGANG was picking up marijuana from both the Turtlecreek Residence and M.N.'s residence, as marijuana previously seized from members of his organization has been transported in similar large trash bags. Further, on February 16, 2022, law enforcement executed a search warrant on the Turtlecreek Residence and discovered 119.37 pounds of illegally processed marijuana.

32. Soon after the wire from Transnation was deposited into **Subject Account 1**, NAIGANG withdrew $45,000.00 in cash and then wired $220,000.00 to Shan and Pei Homes LLC, which has a registered address at 13280 Eaglebluff Lane, Eastvale, California. A grand jury subpoena to Bank of America for the account ending in 8683 owned by Shan and Pei Homes LLC indicated the following:

    a.    on May 2, 2023 (the same day the wire was sent from NAIGANG) and on May 4, 2023, in Norman, Oklahoma, three separate cash deposits were made into the account;

    b.    in June 2023, also in Norman, Oklahoma, five separate cash deposits

        totaling $18,250.00 were made into the account;

    c.     through September 2023, two additional cash deposits were made into the account in Norman, Oklahoma; and

    d.     also through September 2023, two $50,000.00 cashier's checks, each from an unknown Chinese national, were deposited into the account.

Aside from these transactions, there has been little withdrawal or debit activity.

33.     Based upon my training and experience and the information detailed *supra*, it is my belief that NAIGANG utilized the **Subject Accounts** to launder funds from the sale of two residences which had previously been used in furtherance of his illicit black market marijuana operation. NAIGANG has no known connection to Shan and Pei Homes LLC, to whom he wired money from **Subject Account 1**. Furthermore, based on the account activity of Shan and Pei Homes LLC, the majority of the activity in their account occurs in Norman, Oklahoma, even though the account's registered address is in California. Based on my training and experience both in this investigation and through investigation of other Chinese money laundering operations, it is common for Chinese nationals to establish a business entity (such as an LLC) in California to launder illicit proceeds, even though they actually reside in another state. Previous activity in LYU's Bank of America account—also utilized by her putative spouse, NAIGANG—indicates that illicit funds from NAIGANG's operation were laundered through the account, then sent to the account of an individual in California without a legitimate business relationship with NAIGANG or LYU.[9]

---

[9]     LYU was also arrested in May 2023 and later indicted on a money laundering charge on July 5, 2023. During an interview at the time of her arrest, LYU indicated that NAIGANG had access to her Bank of America account.

## **CONCLUSION**

34. Based on the foregoing facts and circumstances, I believe that probable cause exists that NAIGANG has violated 18 U.S.C. §§ 1956 and 1957 (money laundering), as well as 21 U.S.C. §§ 841 (manufacture and distribution of drugs) and 846 (drug conspiracy), through the operation of illegal marijuana grows, coordination of the distribution of marijuana, and the concealment of proceeds therefrom through the banking system and the purchase of assets. This investigation has revealed that the conspiracy and criminal conduct described above continued through at least May 8, 2023, and occurred at least in part, within the Western District of Oklahoma. Consequently, there is probable cause to believe that **Subject Accounts** are subject to seizure pursuant to 18 U.S.C. § 981(b) and 28 U.S.C. 2461(c), as incorporated by 21 U.S.C. § 881(b), 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C); and 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853(f), as incorporated by 18 U.S.C. § 982(b)(1), for violations of 21 U.S.C. §§ 841 and 846; 881(a)(6); and 18 U.S.C. §§ 1956 and 1957.

35. Therefore, it is requested that the HSI or the United States Attorney's Office for the Western District of Oklahoma be authorized to effect the seizure of the contents of the **Subject Accounts** by directing the financial institutions to liquidate some or all of the contents of the accounts at one or more times and upon any liquidation of any contents, turn over the cash value of the liquidated contents to the HSI.

**FURTHER THE AFFIANT SAYETH NOT.**

I declare under penalty of perjury that the foregoing is true and correct this 8th day of November 2023.

Special Agent Josh Reinsch
Homeland Security Investigations (HSI)

Subscribed and sworn to before me this 8th day of November 2023.

AMANDA MAXFIELD GREEN
United States Magistrate Judge